UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD M. ACKRIDGE,

                              Plaintiff,

           -v-

ARAMARK CORRECTIONAL FOOD
SERVICES; COUNTY OF WESTCHESTER;
CAPTAIN ROBERTS; SERGEANT TOSI;
CHAPLAIN OFFICE,

                              Defendants.

No. 16-CV-6301 (KMK)

OPINION & ORDER

Appearances:

Ronald M. Ackridge
Carmel, NY
*Pro Se Plaintiff*

Richard D. Lane, Esq.
Marshall Dennehey Warner Coleman & Goggin
New York, NY
*Counsel for Defendants Captain Roberts, Chaplain Office, Sergeant Tosi, and County of Westchester*

Joseph P. Wodarski, III, Esq.
Bradley L. Wilson, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
Stamford, CT
*Counsel for Defendant Aramark Correctional Services, LLC*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Ronald M. Ackridge ("Plaintiff") brought the instant Action against the

County of Westchester ("Westchester County"), Captain Roberts, the Chaplain Office, Sergeant

Tosi (together, "County Defendants"), and Aramark Correctional Food Services ("Aramark,"

and together with County Defendants, "Defendants") alleging violations of his constitutional and

state law rights for denial of kosher meals and regular Jewish services. (*See* Am. Compl. (Dkt. No. 27).)[1] Specifically, Plaintiff brings federal claims under 42 U.S.C. § 1983 alleging Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights; federal claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq.*; state law claims under New York Civil Rights Law, N.Y. Civ. Rights Law § 40-c; state law claims alleging violation of Article 1 § 3 of the New York State Constitution, N.Y. Const. art. I, § 3; state law claims under the Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"), N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 7009.4, 7024.6 ("N.Y.C.R.R."); and state law claims for "[h]arassment, intentional infliction of emotional and mental stress, wanton disregard and indifference in wrongfully denying Plaintiff his customary religious kosher dietary meals and wrongfully and unlawfully denying Plaintiff his rights to attend and worship with [the] fellowship of Jewish Services." (*See id.*) Before the Court is County Defendants' Motion To Dismiss the Amended

---

[1] Plaintiff's initial pleading named Westchester County Department of Correction as a Defendant. (*See* Compl. 1 (Dkt. No. 2).) Pursuant to an Order issued September 7, 2017, Westchester County was substituted for Westchester County Department of Correction. (*See* Dkt. No. 8).

Plaintiff also sued the "Chaplain Office." (Am. Compl. 1.) The Chaplain Office is an administrative arm of the County of Westchester. As such, it does "not have a legal identity separate and apart from the municipality, and cannot sue or be sued." *Carroll v. City of Mount Vernon*, 707 F. Supp. 2d 449, 450 n.2 (S.D.N.Y. 2010) (quoting *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175–76 (S.D.N.Y. 2003)). Plaintiff's claims against the Chaplain Office must therefore be dismissed. In light of Plaintiff's pro se status and clear intention to assert claims against the County of Westchester, the Court construes the Complaint as asserting claims against the County of Westchester, and directs the Clerk of Court to amend the caption of this Action to replace the Chaplain Office with the County of Westchester.

Plaintiff also sued "Aramark Correctional Food Service." (Am. Compl.) However, Aramark points out this was in error and the proper defendant is "Aramark Correctional Services, LLC." (Def. Aramark's Mem. 1.) The Clerk of the Court is instructed to update the caption accordingly.

Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "County Defendants Motion"), (*see* Notice of Motion (Dkt. No. 43); Cty. Defs.' Mem. of Law in Supp. of Mot. To. Dismiss ("Cty. Defs.' Mem.") (Dkt. No. 44)), and Aramark's Motion To Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Aramark Motion"), (*see* Notice of Motion (Dkt. No. 45); Def. Aramark's Mem. of Law in Supp. of Mot. To. Dismiss ("Def. Aramark's Mem.") (Dkt. No. 48)).  For the following reasons, the Motions are granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Amended Complaint and are taken as true for the purpose of resolving the instant Motions.  At the time of the events described herein, Plaintiff was an inmate at Westchester County Department of Correction ("WCDOC").  (Am. Compl. ¶ 9.)

Plaintiff arrived at WCDOC on February 4, 2016, at approximately 8:27 p.m.  (*Id.*) WCDOC "processed [Plaintiff] to be of the Jewish faith" and Plaintiff "filled out [a] religious diet request for [k]osher meals."  (*Id.*)  For 18 days, from his February 4, 2016 date of admission until dinner on February 23, 2016, Plaintiff did not receive kosher meals.  (*Id.* ¶ 11.) [2]  Plaintiff filed a grievance on February 22, 2016 requesting kosher meals "without further delay."  (Am. Compl. Ex. D ("Feb. 22, 2016 Grievance").)  On February 23, 2016, Sergeant Orness had

---

[2] Occasional words and phrases in Plaintiff's Amended Complaint are written in all capital letters or in parenthesis.  Here and elsewhere, when quoting such words and phrases, this Opinion reverts to conventional capitalization for ease of readability.

Plaintiff approved to receive kosher meals, and a kosher meal was delivered that day. (Am. Compl. Ex. E ("Feb. 29, 2016 Grievance Response").)

According to Plaintiff, "Aramark, the Chaplain Office, and [WC]DOC systemically [sic] and routinely practice discrim[in]atory acts against Jewish inmates/detaine[e]s [by] denying Jewish detainees their request for kosher meal[s]." (*Id.* ¶ 10.) Additionally "[WC]DOC and [Westchester] County [were] well aware of the fact that Aramark has in the past, systemically [sic] denied Jewish inmates/detainees their religious [k]osher dietary meals, [b]ecause Plaintiff ha[d] on other prior occasions had to file grievances[] before Aramark would provide Plaintiff with his religious [k]osher dietary meals. (*Id.* ¶ 12.)[3] Plaintiff alleges that "[WC]DOC took no steps to assure that incoming Jewish inmate/detainees receive their [k]osher dietary meals upon entry." (*Id.*) Instead, WCDOC "sys[y]temically and routinely ma[d]e Jewish detainees wait 3 to 6 weeks before providing them with [k]osher dietary meals." (*Id.*)

Plaintiff also alleges that he was denied "regular, weekly, Jewish services." (*Id.* ¶ 10.) Specifically, Plaintiff alleges he was permitted to attend only one Jewish religious service for Passover since his arrival at WCDOC on February 4, 2016, in violation of RLUIPA. (*Id.* ¶ 13.) According to Plaintiff, "[WC]DOC and [Westchester] County allow[] [the] Chaplain Office to disregard Jewish inmates/detainees rights to regular and/or weekly Jewish religious services." (*Id.*) Plaintiff made numerous requests and filed grievances regarding the lack of regular Jewish services. (*Id.*) Tosi denied Plaintiff's grievance, quoting § 7024.1(d) of the Minimum Standards, requiring that "equal status and protection shall be afforded all prisoners in the

---

[3] Plaintiff attaches various grievances and letters sent regarding these issues to the Amended Complaint. (*See* Compl. Ex. D–L.)

exercise of their religious beliefs, except when such exercise results in facility expenditures which are unreasonable or disproportionate to those extended to other prisoners for similar purposes." (Am. Compl. Ex. G ("Apr. 9, 2016 Grievance Response") (quoting 9 N.Y.C.R.R. § 7024.1(d)).) The response noted that WCDOC "does not house enough Jewish [i]nmates to warrant separate Jewish services," and that Rabbi Horowitz was instructed "to see to Plaintiff's religious needs." (*Id.*)

Plaintiff alleges that WCDOC, Westchester County, Aramark, and the Chaplain Office "knowingly [and] with total disregard pursued a policy and custom of deliberate indifference[] of the rights, needs[,] and laws of Jewish detainees/inmates . . . including Plaintiff, in its procedures for supervising and assuring that Jewish inmates/detainees are provided with religious [k]osher dietary meals and religious Jewish services." (*Id.* ¶ 14.) And, WCDOC and Westchester County "failed to institute a bona fide procedure and policy in which [D]efendants investigated Aramark and [the] Chaplain Office for wrongful[ly] and unlawfully denying Jewish inmates/detainees their religious kosher dietary meals and Jewish [s]ervices." (*Id.* ¶ 15.) According to Plaintiff, Westchester County and WCDOC "act[] as [m]unicipal policymakers in the hiring, contracting, training[,] and supervision of [D]efendants Aramark and [the] Chaplains Office; and have pursued a policy and custom of deliberate indifference to the religious rights, laws[,] and practice[s] of Jewish detainees, including Plaintiff," and "knowingly violat[ed] Plaintiff's rights to observe, practice[,] and worship his religious belief." (*Id.* ¶ 26.)

Plaintiff requests a judgment that Defendants violated his rights under federal and state law. (*Id.* 6.) Plaintiff also seeks $5,000,000 in compensatory damages and $5,000,000 in punitive damages, as well as attorney's fees and litigation expenses. (*Id.*)[4]

B. Procedural History

Plaintiff filed his initial Complaint on August 8, 2016 against Aramark Correctional Food Service, Westchester County Department of Correction, and Captain Roberts. (Compl. (Dkt. No. 2).) That same day, he filed a request to appear in forma pauperis, (Dkt. No. 1), which the Court granted, (Dkt. No. 5).[5] On September 7, 2016, the Court issued an Order of Service, directing service on the named Defendants. (Dkt. No. 8.) On September 13, 2016, Plaintiff sought leave to file an amended complaint. (Dkt. No. 11.) That same day, Plaintiff filed a copy of the proposed Amended Complaint and requested that the Court direct service of the proposed Amended Complaint. (Dkt. No. 12.) On September 19, 2016, Plaintiff wrote the Court asking that the Amended Complaint be accepted. (Dkt. No. 13.)

On October 14, 2016, Plaintiff filed a "Notice of Motion for Summary Judgment," (Dkt. No. 19), along with a memorandum of law, supporting exhibits, and statement of material facts, (Dkt. Nos. 20, 21). On October 19, 2016, Plaintiff filed a supplemental memorandum of law. (Dkt. No. 22.) Pursuant to a memo endorsement, on October 20, 2016, the Court denied the Motion for Summary Judgment without prejudice, as discovery had not yet been conducted, and

---

[4] The Court denies Plaintiff's request for attorney's fees, because "a pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (italics omitted).

[5] On August 16, 2016, August 30, 2016, and September 9, 2016, Plaintiff wrote the Court asking about the status of his case. (Dkt. Nos. 4, 6, 10.)

for failure to follow the Court's individual practices before filing a motion. (Dkt. No. 23.) In response to the denial, Plaintiff wrote to the Court on October 25, 2016 asking that the case proceed. (Dkt. No. 24.) Pursuant to a memo endorsement, on October 27, 2016, the Court informed Plaintiff that a Rule 16 conference would be scheduled once service was complete. (Dkt. No. 25.)

On October 27, 2016, the Court granted Plaintiff leave to file the Amended Complaint pursuant to a Memo Endorsement. (Dkt. No. 26.) On October 31, 2016, the Amended Complained was docketed, alleging claims against Westchester County Department of Correction, Captain Roberts, the Chaplain Office, Sergeant Tosi, and Westchester County. (Dkt. No. 27.) On January 19, 2017, Plaintiff wrote the Court requesting a Rule 16 Conference and renewed his demand for summary judgment. (Dkt. No. 33.) The Court scheduled a conference for February 15, 2017. (Dkt. No. 34.)[6] County Defendants submitted a premotion letter on February 14, 2017, indicating the grounds on which County Defendants would move to dismiss. (Dkt. No. 40.) Aramark also submitted a premotion letter on February 14, 2017, indicating the grounds on which they would move to dismiss. (Dkt. No. 41.) The Court held a conference on February 15, 2017, and set a briefing schedule for the Motions to Dismiss. (Mot. Scheduling Order (Dkt. No. 42).)

In accordance with the Scheduling Order, County Defendants filed their Motion To Dismiss and accompanying Memorandum of Law on March 15, 2016. (Dkt. No. 43; Cty. Defs.' Mem.) Defendant Aramark also filed their Motion to Dismiss and an accompanying

---

[6] On January 26, 2017, Counsel for Aramark informed the Court that Aramark had not yet been served, but that Counsel was willing to accept service on behalf of Aramark in the interest of expediting the matter. (Dkt. No. 36.)

Memorandum of Law, declaration, and affidavit on March 15, 2017. (Dkt. Nos. 45–47; Def. Aramark's Mem.)[7] On April 3, 2017, Plaintiff filed his Opposition to Defendants' Motions. (Pl.'s Opp. To Defs.' Mot. To Dismiss ("Pl.'s Opp.") (Dkt. No. 50).) On March 8, 2017, County Defendants and Defendant Aramark filed their respective Replies. (Cty. Defs.' Reply Mem. of Law in Supp. of Mot. To. Dismiss ("Cty. Defs.' Reply Mem.") (Dkt. No. 53); Def. Aramark's Reply Mem. of Law in Supp. of Mot. To. Dismiss ("Def Aramark's Reply Mem.") (Dkt. No. 52).)[8]

## II. Discussion

### A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks

---

[7] On March 24, 2017, Plaintiff filed an application requesting the Court appoint pro bono counsel. (Dkt. No. 49.) On April 26, 2017, the Court denied the request without prejudice. (Dkt. No. 51.)

[8] On July 11, 2017 and August 3, 2017, Plaintiff wrote the Court inquiring about the status of his case and requesting that the case be heard for settlement or placed on the trial calendar. (Dkt. Nos. 57–58.) The Court informed Plaintiff that the Court would decide the pending motions in due course and that settlement or trial, if necessary, would be addressed following decision on these motions. (Dkt. No. 59.)

omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations. . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the

plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014)

(citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of

Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also*

*Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec.

2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).

However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from

compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp.

2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga*

*County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform

themselves regarding procedural rules and to comply with them." (italics and internal quotation

marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal

quotation marks omitted). However, when the complaint is pro se, the Court may consider

"materials outside the complaint to the extent that they are consistent with the allegations in the

complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug.

2, 2013) (internal quotation marks omitted), including, "documents that a pro se litigant attaches

to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y.

Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Analysis

County Defendants move to dismiss Plaintiff's Amended Complaint on several grounds: (1) that Plaintiff failed to allege that his sincerely held religious beliefs were substantially burdened as is required to state a First Amendment claim; (2) that Plaintiff failed to allege the personal involvement of Roberts and Tosi; (3) that Roberts and Tosi cannot be sued in their official capacities; (4) that Plaintiff failed to allege a violation of the Establishment Clause, Fifth Amendment, Eighth Amendment, or Fourteenth Amendment; (5) that Plaintiff failed to allege the existence of any policy or practice that caused the alleged harms under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (6) that Plaintiff's RLUIPA claim fails because RLUIPA does not provide for monetary damages; (7) that the Court should decline to exercise supplemental jurisdiction over the state law claims; (8) that Plaintiff has failed to state a claim for violation of the New York Constitution; (9) that Plaintiff's claim under the Minimum Standards §§ 7009.4 and 7024.6 fails because the Minimum Standards do not provide a private right of action; (10) that Plaintiff's claims pursuant to New York Civil Rights Law 40-c fails because prisons are not covered by the statute; (11) that Plaintiff's claim for a declaratory judgment is moot; and (12) Westchester County Department of Correction and the Chaplain Office are not entities subject to suit.  (*See generally* Cty. Defs.' Mem.)

11

Aramark also moves to dismiss Plaintiff's Amended Complaint on several grounds: (1) that Plaintiff failed to allege a custom or policy under which to find Aramark liable; (2) that Aramark was not acting in concert with or as a state actor and cannot be sued under § 1983; (3) that Plaintiff failed to exhaust administrative remedies as to Aramark; (4) that Plaintiff failed to allege that his sincerely religious beliefs were substantially burdened as is required to state a First Amendment claim; and (5) that Plaintiff's state law claims should be dismissed. (*See generally* Def. Aramark's Mem.)

Due to the significant overlap in the claims regarding the delay in receiving kosher meals against County Defendants and Aramark, the Court first determines whether Aramark was acting under the color of state law and can be sued under § 1983. Then, the Court addresses the claims against County Defendants and Aramark together where appropriate.

### 1. Aramark Acting Under Color of State Law

Aramark argues that Plaintiff's claims against it must be dismissed because it is not a state actor. (Def. Aramark's Mem. 7–9.)[9] To state a claim for any constitutional violation under § 1983, a plaintiff must allege that "a person acting under color of state law deprived him or her of a right secured by the Constitution or laws of the United States." *Oliveira v. Price Law Firm*, No. 14-CV-4475, 2014 WL 4088199, at *2 (S.D.N.Y. July 30, 2014); *see also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff

---

[9] The Court notes that Aramark does not cite any case law when arguing that the test for whether a private entity is a state actor has not been satisfied as to Aramark. (Def. Aramark's Mem. 8–9.) This is problematic for Aramark in light of the Court's decision in *Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472 (S.D.N.Y. Dec. 16, 2015), holding that Aramark is a state actor when providing food to inmates in a state prison. *Id.* at *4–6.

must allege that defendants violated plaintiff's federal rights while acting under color of state law."); *Schiff v. Suffolk Cty. Police Dep't*, No. 12-CV-1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015) (same). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "State action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (alteration and internal quotation marks omitted). Thus, in order to survive a motion to dismiss, "a plaintiff must allege he was injured by either a state actor or private party acting under the color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).

Here, Plaintiff brings suit alleging constitutional violations against Aramark, a private entity. Therefore, the Court must assess whether Plaintiff has adequately alleged that he was injured by a private party acting under color of state law. In the Second Circuit, there are three circumstances under which a private entity is said to act under color of state law. The Second Circuit has described these circumstances as follows:

> For the purposes of [§] 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001). "The

fundamental question that underlies each of these tests is whether the challenged actions of the

private actor are 'fairly attributable' to the state." *Watson v. Grady*, No. 09-CV-3055, 2015 WL

2168189, at *9 (S.D.N.Y. May 7, 2015) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838

(1982)). Although Plaintiff has arguably offered little in terms of facts that bear upon the

question directly, the Amended Complaint nonetheless includes sufficient allegations for the

Court to find the presence of state action under either the close nexus or public function tests.

Specifically, Plaintiff alleges that Defendant prepared meals for WCDOC, including kosher

meals. (Am. Compl. ¶¶ 9–10, 12.)[10]

### a. Close Nexus Test

To satisfy a claim under the "close nexus" test, a plaintiff must allege "a sufficiently

close nexus between the State and the challenged action of the regulated entity so that the action

of the latter may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991,

1004 (1982) (internal quotations omitted). In determining whether such a nexus exists, courts

must "analyze whether the state can be fairly held responsible for private conduct by virtue of the

ties between the state and private actor." *Pagan*, 2014 WL 982876, at *24 (internal quotation

marks omitted); *see also Preston v. New York*, 223 F. Supp. 2d 452, 465 (S.D.N.Y. 2002) (same),

_____

[10] Aramark includes with its Motion To Dismiss the agreement between Aramark and
Westchester County to provide food services, a document that is outside the Amended
Complaint. (Decl. of Joseph Wodarski, Esq. Ex. A (Dkt. No. 46).) As the agreement is not
"appended to the complaint or incorporated in the complaint by reference," it is inappropriate for
consideration on a motion to dismiss. *Leonard*, 199 F.3d at 107.

*aff'd sub nom. Preston v. Quinn*, 87 F. App'x 221 (2d Cir. 2004). Courts have found such a nexus where a private organization performs services that "flow[] directly from the obligations of the government entity and [are] performed under its supervision." *Pagan*, 2014 WL 982876, at *25; *see also West v. Atkins*, 487 U.S. 42, 54–55 (1988) (finding state action where a physician provided medical services to inmates pursuant to a contract with the state); *Wilson v. Phoenix House*, No. 10-CV-7364, 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011) (concluding that the defendant in-patient substance abuse treatment center was state actor under the close nexus test). Perhaps unsurprisingly, a number of courts have found that, where Aramark contracts with a prison to provide food to inmates, a sufficiently close nexus exists. *See, e.g.*, *Torres*, 2015 WL 9077472, at *4–6 (finding close nexus satisfied for First Amendment claims regarding Aramark's provision of Ramadan meals); *Best v. Aramark Corr. Servs., LLC*, No. 14-CV-243, 2014 WL 4980553, at *3 (S.D. Ind. Oct. 6, 2014) (applying close nexus test in context of the plaintiff's claim that Aramark "failed to provide him with constitutionally adequate meals" and concluding that it "[could not] hold that Aramark is not a state actor in these circumstances subject to liability under § 1983"); *Pagan*, 2014 WL 982876, at *24 ("[T]here is a sufficiently close nexus between the County . . . and Aramark's actions such that the conduct of Aramark is attributable to the state itself."); *Jubeh v. Dart*, No. 11-CV-3873, 2011 WL 6010267, at *2 (N.D. Ill. Nov. 29, 2011) ("Aramark has voluntarily assumed the function of providing nutritionally adequate food to inmates and may be subject to [§] 1983 liability if its conduct violated the inmate's constitutional right to adequate food."); *Jones v. Aramark Food Servs.*, No. 11-CV-15, 2011 WL 3203524, at *5 n.3 (D. N.J. July 27, 2011) (describing the close nexus test and concluding that "[t]he [c]omplaint appears to allege facts that Aramark . . . may have been acting

under color of state law, as required to state a § 1983 claim"); *but see James v. Correct Care Solutions*, No. 13-CV-19, 2013 WL 5730176, at *8–9 (S.D.N.Y. Oct. 21, 2013) (concluding Aramark was not a state actor where employed to provide food services at Westchester County Jail).

Here, a sufficiently close nexus exists because it would be fair to hold the state responsible for the private conduct at issue by virtue of the ties between the WCDOC and Aramark. *See Torres*, 2015 WL 9077472, at *4–6; *Pagan*, 2014 WL 982876, at *25. Aramark, apparently acting pursuant to a contract, prepared the kosher and non-kosher meals for the WCDOC. (*See* Am. Compl. ¶¶ 9–10, 12.) Moreover, jail personnel allegedly were prepared to field Plaintiff's complaints about the food. (*See* Jan. 29, 2016 Grievance Response.) Consequently, because the arrangement between the jail and Aramark allowed the jail, in effect, to shift one of its obligations to Aramark, the Court finds that the nexus between the two is sufficient to plausibly impute state action to Aramark.

### b. Public Function Test

Even if state action could not be found under the close nexus test, it would nonetheless exist due to the public function test. Under that test, the conduct of an otherwise private party will be treated as state action if it is "so clearly governmental in nature as to amount to a public function." *Jordan v. Fed. Bureau of Prisons*, No. 09-CV-8561, 2013 WL 1143617, at *12 (S.D.N.Y. Mar. 19, 2013) (internal quotation marks omitted). "The mere fact that a private actor is paid by state funds, or is hired by a state actor, is insufficient to establish state action" under the public function test. *Emanuel v. Griffin,* No. 13-CV-1806, 2013 WL 5477505, at *5 (S.D.N.Y. Oct. 2, 2013). "The public function test as applied is quite stringent and under the

doctrine an extraordinarily low number of . . . functions have been held to be . . . public." *Doe v. Harrison*, 254 F. Supp. 2d 338, 343 (S.D.N.Y. 2003) (internal quotation marks omitted). Nevertheless, a number of courts to have considered the question have concluded that "[p]roviding food service . . . to . . . incarcerated people is one part of the government function of incarceration," thus rendering food service providers state actors for purpose of § 1983 analysis. *McCullum v. City of Phila.*, No. 98-CV-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999); *see also Sutton v. City of Phila.*, 21 F. Supp. 3d 474, 482 (E.D. Pa. 2014) (same); *Pagan*, 2014 WL 982876, at *24 (same). Indeed, many—although not all—courts to have considered the question have concluded that Aramark, when it feeds prisoners, is a state actor under the public function test. *See, e.g.*, *Torres*, 2015 WL 9077472, at *6 (finding public function satisfied for First Amendment claims regarding Aramark's provision of Ramadan meals); *Pagan*, 2014 WL 982876, at *24 ("Aramark is serving a public function in providing daily meals to inmates."); *Smego v. Aramark Food Servs. Corp.*, No. 10-CV-3334, 2013 WL 1987262, at *6 (C.D. Ill. May 13, 2013) ("The Aramark [d]efendants are state actors because they have voluntarily assumed the obligation to fulfill an essential state function: feeding detainees in a state facility."); *Jubeh*, 2011 WL 6010267, at *2 (finding that a county "has a duty to provide nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to detainees' health and well being," and concluding Aramark was a state actor where that duty was outsourced to it (alterations and internal quotation marks omitted)); *but see James*, 2013 WL 5730176, at *9 (noting the public function test but concluding that the complaint offered no basis to treat Aramark as a state actor).

Because providing food to inmates is a public function, *see Torres*, 2015 WL 9077472, at *6; *Pagan*, 2014 WL 982876, at *24, and because Plaintiff's Amended Complaint relates to the meals that Aramark, acting as the state's culinary surrogate, provided to the prisoners, (*see* Am. Compl. ¶¶ 9–10, 12), the Court concludes that Plaintiff has plausibly alleged that Aramark is a state actor for purposes of this case.

## 2. PLRA Exhaustion as to Aramark

Aramark argues that Plaintiff failed to exhaust administrative remedies with respect to Aramark pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), (Def. Aramark's Mem. 9–10), which provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), including actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007)

18

("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

The PLRA does, however, "contain[] its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The Supreme Court recently explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 737–38).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. These three circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

19

A plaintiff need not plead that one of these three circumstances exists or that he did in fact exhaust her administrative remedies, because the "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829 F.3d at 122. Defendants bear the burden of proving that Plaintiff failed to exhaust any available administrative remedies. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)). Thus, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

While Aramark is correct that Plaintiff does not allege he commenced administrative remedies with respect to Aramark and that none of the grievances Plaintiff attached to his Amended Complaint references Aramark, at the motion to dismiss stage, Plaintiff "need not plead exhaustion with particularity." *McCoy v*, 255 F. Supp. 2d at 248. Aramark has not met its

burden of proof in demonstrating that Plaintiff failed to exhaust his administrative remedies

merely by pointing to a lack of allegations of exhaustion or a lack of exhibits demonstrating

exhaustion in the Amended Complaint.  Accordingly, because non-exhaustion is not "clear from

the face of the [Amended C]omplaint," *Lovick*, 2014 WL 3778184, at *4 (internal quotation

marks omitted), the Court declines to grant Aramark's Motion on this ground.

### 3. *Monell* Claims

Westchester County and Aramark argue that the Amended Complaint should be

dismissed for failure to allege a municipal policy, custom, or practice that caused the alleged

constitutional violations.  (Cty. Defs.' Mem. 15; Def. Aramark's Mem. 5–7.)

### a.  Standard of Review

"Congress did not intend municipalities to be held liable [under § 1983] unless action

pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436

U.S. at 691.  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of

a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2)

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*,

542 F.3d 31, 36 (2d Cir. 2008).  The fifth element reflects the notion that a *Monell* defendant

"may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cty.*

*Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of*

*N.Y.*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by

the Supreme Court, municipalities may only be held liable when the municipality itself deprives

an individual of a constitutional right.").  In other words, a municipality may not be liable under

§ 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).

Although, as discussed above, a private actor like Aramark may be treated as a state actor for purposes of a claim brought pursuant to § 1983, "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees unless the plaintiff proves that action pursuant to official policy of some nature caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (alterations, citations, and internal quotation marks omitted); *Mora v. Camden County*, No. 09-CV-4183, 2010 WL 2560680, at *10 (D. N.J. June 21, 2010) ("[I]n order for an entity such as Aramark to be liable under § 1983, [the p]laintiffs must show that the entity had a relevant policy or custom, and that the policy caused the constitutional violation"); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester Cty.*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against the county because the complaint did "not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010). In determining whether a private employer may be liable in a § 1983 claim, courts are guided by the principles articulated in *Monell* and its progeny. *See Rojas*, 924 F.2d at 409 ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *see also Gitter v. Target Corp.*, No. 14-CV-4460, 2015 WL 5710454, at *3 n.4 (S.D.N.Y. Sept. 29, 2015) ("The Second Circuit has extended *Monell*'s rationale to private businesses");

*Dilworth v. Goldberg*, No. 10-CV-2224, 2011 WL 3501869, at *24 (S.D.N.Y. July 28, 2011)

("[C]ase law has extended the *Monell* doctrine to private § 1983 defendants acting under color of

state law." (alterations and internal quotation marks omitted)), *adopted by* 2011 WL 4526555

(S.D.N.Y. Sept. 30, 2011).

A plaintiff may satisfy *Monell's* "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted);

*Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (describing methods of

establishing *Monell* liability); *see also Ryan v. Cty. of Nassau*, No. 12-CV-5343, 2018 WL

354684, at *3 (E.D.N.Y. Jan. 10, 2018) ("In order for a municipality . . . to be liable for

deliberate indifference to medical needs under *Monell* . . . the plaintiff must show that the action

that caused the constitutional violation was undertaken pursuant to an official policy." (citation

and internal quotation marks omitted)). Moreover, a plaintiff also must establish a causal link

between the municipality's policy, custom, or practice and the alleged constitutional injury. *See*

*City of Okla. v. Tuttle*, 471 U.S. 808, 824 n. 8 (1985) ("The fact that a municipal 'policy' might

lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular

policy be the 'moving force' behind a *constitutional* violation. There must at least be an

affirmative link between[, for example,] the training inadequacies alleged, and the particular

constitutional violation at issue."); *Simms v. City of N.Y.*, 480 F. App'x. 627, 629 (2d Cir. 2012) (the plaintiff "must 'demonstrate that, through its deliberate conduct, the [entity] itself was the moving force behind the alleged injury.'" (internal quotation marks and alteration omitted)). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271 (S.D.N.Y. 2008); *see also Tuttle*, 471 U.S. at 823–24 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (plurality opinion)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

At this stage, of course, Plaintiff need not prove these elements, but he must still plead them sufficiently to make out a plausible claim for relief. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *see Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted). Thus, to survive the Motions, Plaintiff cannot merely allege the existence of a policy or custom but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

### b.  Claims Against Westchester County

Westchester County argues that the Amended Complaint should be dismissed for failure to allege a municipal policy, custom, or practice that caused the alleged constitutional violations. (Cty. Defs.' Mem. 15.)  The Court agrees.

### 1.  Delay in Receiving Kosher Meals

Plaintiff has failed to plausibly allege that the delay in receiving kosher meals was the result of a policy, custom, or practice that violated Plaintiff's Free Exercise rights.  There are at least two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton*, 566 F. Supp. 2d at 271.  "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted).  "To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled," *Tieman*, 2015 WL 1379652, at *16, which is to say, that it is "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity," *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted).  "Widespread means that [the unconstitutional acts in question] are common or prevalent throughout the [municipality]; well-settled means that the

[unconstitutional acts in question] have achieved permanent, or close to permanent, status." *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002).

Here, Plaintiff alleges Westchester County "pursued a policy and custom of deliberate indifferences of the rights, needs[,] and laws of Jewish detainees/inmates." (Am. Compl. ¶ 14; *see also* ¶ 26 (same).) Plaintiff also alleges that WCDOC "systemically [sic] and routinely . . . den[ies] Jewish detainees their request[s] for kosher meal[s]," (Am. Compl. ¶ 10), and "sys[]temically and routinely make[s] Jewish detainees wait 3 to 6 weeks before providing them with [k]osher dietary meals," (*id.* ¶ 12.) Additionally, Plaintiff asserts that the "procedures for supervising and assuring that Jewish inmates/detainees are provided with religious [k]osher dietary meals" is insufficient, (*id.* ¶ 14), and WCDOC "took no steps to assure that incoming Jewish inmates/detainees receiv[d] their [k]osher dietary meals upon entry," (*id.* ¶ 12). Finally, Plaintiff alleges that Westchester County "was well aware of the fact that Aramark . . . denied Jewish inmates/detainees" and took no "steps to prevent Aramark from deny[ing] giving Jewish inmates/detainees their [k]osher dietary meals, in a timely fashion, upon entry into [WC]DOC." (*Id.*)

Plaintiff neither cites nor describes any official municipal policy or practice, nor does he allege that any individual had official policymaking authority and took action pursuant to that authority. Additionally, the Complaint is devoid of *any* facts that support the existence of a tacit, widespread custom sufficient to sustain a claim for relief under *Monell*. "Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim." *Maynard v. City of New York,* No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119,

124 (2d Cir. 1991) (reaffirming "that an allegation of municipal policy or custom would be insufficient if wholly conclusory"); *Guerrero v. City of New York*, No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("At the pleading stage, the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (alteration and internal quotation marks omitted)); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution"); *cf. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

Aside from the eighteen days Plaintiff personally experienced without kosher food, (Am. Compl. ¶ 11), the Complaint fails to allege specific facts regarding Jewish inmates being denied kosher meals. While the Complaint "details an incident that Plaintiff finds objectionable, it does not plead the existence of a municipal policy or custom." *Vasquez v. Vill. of Haverstraw*, No. 15-CV-8845, 2017 WL 4296791, at *6 (S.D.N.Y. Sept. 26, 2017); *see also Pittman v. City of New York*, No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014) ("A *Monell* claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects th[e] incident to a municipal policy or practice."); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of

what occurred in his particular case"). Accordingly, Plaintiff's claims against Westchester County alleging a policy or custom of denying kosher meals are dismissed.

## 2. Lack of Regular Jewish Services

Plaintiff has also failed to plausibly allege that the lack of regular Jewish services was the result of a policy, custom, or practice that violated Plaintiff's Free Exercise rights. (*See* Compl. ¶¶ 10, 13–15.) Plaintiff alleges that the decision not to hold regular Jewish services, as outlined in the April 9, 2016 response to his grievance, (April 9, 2016 Grievance Response), was unconstitutional, (Am. Compl. ¶ 10), and that Westchester County has "allow[ed the] Chaplain Office to disregard Jewish inmates/detainees[s] right to regular and/or weekly Jewish religious services," (*id.* ¶ 13). According to Plaintiff, Westchester County did not prevent the Chaplain Office from "wrongful[ly] and unlawfully denying Jewish inmates/detainees . . . regular Jewish services." (*Id.* ¶ 15.) A municipality may be subject to § 1983 liability for acts of its officials "who have final policymaking authority" in the area in which the action was taken. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal quotation marks omitted). However, Plaintiff fails to allege who made the decision to not hold regular Jewish services. Sergeant Tosi responded to Plaintiff's grievance, but Plaintiff does not suggest he was "a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Newton*, 566 F. Supp. 2d at 271. And, to the extent the "Chaplain Office" was responsible for the decision, Plaintiff fails to allege the Chaplain Office is considered a policymaker under state law or to identify an individual in the Chaplain Office with policymaking authority that was responsible for the decision. *See Pignone v. Vill. of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014) (noting that "[a]

28

plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization"). Accordingly, Plaintiff's claims against Westchester County alleging a policy or custom of not holding regular Jewish services are dismissed.

### b. Claims Against Aramark

Apart from Aramark's arguments that it is not acting in concert with a state actor or a state actor such that *Monell* does not apply to its actions, (*see* Def. Aramark's Mem. 7–9), Aramark further argues that Plaintiff has failed to allege a causal link between the alleged § 1983 violation and an alleged Aramark policy or custom sufficient to support a *Monell* claim, (*see id.* at 5–6).

The Amended Complaint asserts that Aramark "systemically [sic] and routinely practices discrim[in]atory acts against Jewish inmates/detaine[e]s in denying Jewish detainees their request[s] for kosher meal[s]," (Am. Compl. ¶ 10), and that "Aramark has in the past, systemically [sic] denied Jewish inmates/detainees their religious [k]osher dietary meals[,] [b]ecause . . . Plaintiff ha[d] on other prior occasions had to file grievances, before Aramark would provide Plaintiff with his religious kosher dietary maels [sic]." (*Id.* ¶ 12.) Plaintiff does not allege the existence of an Aramark policy or custom under any of the prongs identified in *Brandon*, 705 F. Supp. 2d at 276–77. In fact, the Amended Complaint indicates that WCDOC was responsible for Plaintiff's intake and religious registration process and that WCDOC policy determines what meals prisoners were served based on the information provided at registration. (Am. Compl. ¶ 9.) The Amended Complaint makes no allegation that Aramark was involved in ensuring Plaintiff was registered to receive the religious dietary accommodations he was

constitutionally due or had any independent ability to give Plaintiff kosher meals if the prison

has not yet approved him to receive them.  Additionally, Plaintiff does not allege that Aramark

even knew about Plaintiff's religious dietary restrictions and nonetheless failed to serve him

kosher meals.  These allegations are insufficient to allege that an Aramark policy was "the

'moving force' behind a constitutional violation."  Accordingly, Aramark's Motion is granted as

to the § 1983 claims.

### 4.  Personal Involvement of Tosi and Roberts[11]

Tosi and Roberts argue that the Amended Complaint should be dismissed against them

because they were not personally involved in the alleged Constitutional violations.  (Cty. Defs.'

Mem. 8–9.)

"It is well settled that, in order to establish a defendant's individual liability in a suit

brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited

---

[11] Plaintiff sues Roberts and Tosi in their official and individual capacities.  Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (claim against a municipal employee in his official capacity is deemed brought against the municipality itself).  "[W]hen the defendant . . . [is an] individual sued in his official capacity . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom."  *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004).  The Court addressed Westchester County's *Monell* liability above.  *See supra* Part II.B.3.b.

> deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege conduct by Roberts and Tosi that falls into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

### a. Roberts

Plaintiff has failed to plausibly allege Roberts' personal involvement in the alleged constitutional deprivations. The gravamen of the claims against Roberts is that he "denied Plaintiff's grievance about his failure to receive kosher meals for eighteen days. (Am. Compl. ¶ 16(e) (citing Feb. 29, 2016 Grievance Response.)) In reality, Roberts responded to Plaintiff's request on February 22, 2016 for a written decision regarding Plaintiff's grievance filed on February 15, 2016. ("Feb. 22, 2016 Grievance"). The written response stated that "[o]n February 23, 2016 Sgt. Omess contacted Father Paul Tolve [("Father Tolve")] and had it approved for you to receive a kosher meal which was delivered later that day and continues to be delivered on a daily basis." (Feb. 29, 2016 Grievance Response.) Accordingly, because Plaintiff was approved for kosher meals and continued to receive kosher meals, the grievance was "accepted" and the "complaint rectified." (*Id.*) Thus, Plaintiff could not appeal the decision and the matter was deemed completed. (*Id.*) The Amended Complaint contains no allegations

whatsoever that Roberts was involved in or somehow permitted Plaintiff to be denied kosher meals prior to his grievance being rectified, or that he even knew Plaintiff was denied kosher meals. To the extent Roberts was even informed of the violation through the February 15, 2016 grievance, Roberts did not "fail[] to remedy the wrong," *Grullon*, 720 F.3d at 139 (internal quotation marks omitted),—rather, the February 22, 2016 grievance response indicates the wrong was remedied.

Moreover, Roberts cannot be held personally liable for constitutional violations by others in WCDOC merely "because he was in a high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (affirming summary judgment ruling in favor of the Commissioner of the New York Department of Correctional Services); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (explaining that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority" (alteration and internal quotation marks omitted)). "Supervisory status, without more, is not sufficient to subject a defendant to [§] 1983 liability." *Fortunato v. Bernstein*, No. 12-CV-1630, 2015 WL 5813376, at *6 (S.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted). Personal involvement "requires a showing of more than the linkage in the prison chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (same).

Additionally, the Amended Complaint lacks any allegation that Roberts failed to intervene in the denial of kosher meals by failing to remedy a known wrong or "exhibit[ing] deliberate indifference" to Plaintiff's rights "by failing to act on information indicating that unconstitutional acts were occurring." *Grullon*, 720 F.3d at 139 (italics and internal quotation

marks omitted).  Nor does Plaintiff allege that Roberts personally was aware that WCDOC had a history of denying inmates kosher meals, such that the Court could reasonably infer that Roberts knew Plaintiff would be denied kosher meals.  *See id.* at 139 (listing as categories of personal involvement when a defendant allows "a policy or custom" of unconstitutional practices to continue or when he "was grossly negligent in supervising subordinates who committed the wrongful acts" (internal quotation marks omitted).  The Court therefore grants Roberts' Motion to Dismiss for lack of personal involvement.

### b.  Tosi

Plaintiff has plausibly alleged Tosi's personal involvement in the alleged constitutional deprivations.  The gravamen of the claims against Tosi is that Tosi denied Plaintiff's grievance seeking separate Jewish services.  (Am. Compl. ¶ 16(f) (citing Apr. 9, 2016 Grievance Response).)  Relying on Minimum Standard § 7024.1(d), which provides that "equal status and protection shall be afforded all prisoners in the exercise of their religious beliefs, except when such exercise results in facility expenditures which are unreasonable or disproportionate to those extended to other prisoners for similar purpose," Tosi's grievance response states that "[t]he Westchester County Department of Correction does not house enough Jewish Inmates to warrant a separate Jewish service.  The director of Pastoral Care Father Paul Tolve is aware of your issue and has instructed Rabbi Horowitz to see to your religious needs."  (Apr. 9, 2016 Grievance Response).

The Second Circuit noted in dictum some years ago that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of."  *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Since then, "courts in

t[he Second] Circuit are divided regarding whether review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act." *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009); *see also Thomas v. Calero*, 824 F. Supp. 2d 488, 507–08 (S.D.N.Y. 2011) (discussion division and collecting cases); *Garcia v. Watts,* No. 08-CV-7778, 2009 WL 2777085, at *15–16 (S.D.N.Y. Sept. 1, 2009) (same).[12]  Other courts have typically considered three factors to determine whether a prison official was personally involved based on the denial of a grievance:

> The first factor was the distinction between simply affirming the denial of a grievance and review[ing] and respond[ing] to a prisoner's complaint by undertaking some kind of investigation . . . Second, some courts drew a distinction between a *pro forma* denial of a grievance and a detailed and specific response to a grievance's allegations.  Finally, some courts looked to whether the alleged constitutional violation complained of in a grievance [was] ongoing . . . such that the supervisory official who reviews the grievance can remedy [it] directly, finding personal involvement only in cases dealing with ongoing violations.

*Thomas*, 824 F. Supp. 2d at 507 (internal quotation marks and citations omitted).

Here, Plaintiff has sufficiently alleged an "ongoing" constitutional violation regarding his lack of access to regular Jewish services at the time he filed the grievances.  *See infra* Part II.B.5. And, Tosi, as the supervisory official who reviewed the grievance, could have remedied it directly.  *Thomas*, 824 F. Supp. 2d at 507; *see also Young v. Choinski*, 15 F. Supp. 3d 172, 192 (D. Conn. 2014) (noting that "if the supervisory official is confronted with an ongoing

---

[12] Oddly, County Defendants rely on *Joseph v. Fischer*, No. 08-CV-2824, 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009) (holding after "*Iqbal*, a government official's act of affirming the denial of a grievance that alleges the deprivation of a constitutional right, without more, is insufficient to establish that the defendant was personally involved in depriving plaintiff of that right"), without even acknowledging the clear divide among the district courts in the Second Circuit on this question.

constitutional violation and reviews a grievance or appeal regarding that violation, that official is "personally involved" if he or she can remedy the violation directly" (internal quotation marks omitted)); *Phillip v. Schriro*, No. 12-CV-8349, 2014 WL 4184816, at *5 (S.D.N.Y. Aug. 22, 2014) (contact from grievance committee to wardens regarding repeated denial of attendance at religious services sufficiently alleged ongoing violation defendant could remedy); *cf. Burton v. Lynch*, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (finding no ongoing violation for grievance regarding alleged beating that "relates to a past harm which has ceased"). Thus, the Court cannot say that Plaintiff's claim against Tosi fails as a matter of law. The Court therefore denies Tosi's Motion to Dismiss for lack of personal involvement.

### 5. Free Exercise Claims[13]

### a. Standard of Review

Defendants argue that the Amended Complaint fails to state a Free Exercise claim under the First Amendment. (Cty. Defs.' Mem. 4–9; Def. Aramark's Mem. 10–11.) The Free Exercise Clause of the First Amendment is an "unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience." *Patrick v. LeFevre,* 745 F.2d 153, 157 (2d Cir. 1984). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), which includes "a constitutional right to participate in congregate religious services," *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.), *cert. denied,* 492 U.S. 909 (1989)); *see*

---

[13] Because the Court has dismissed Westchester County, Aramark, and Roberts, the only Defendants alleged to be responsible for the lack of Kosher meals, the Court only addresses the Free Exercise claim regarding the lack of Jewish services.

*also Pugh v. Goord*, 571 F. Supp. 2d 477, 511 (S.D.N.Y. 2008) (finding that prisoners "are entitled to a reasonable opportunity to worship").

A prisoner's First Amendment rights, however, are "[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks omitted); *see also Benjamin v. Coughlin,* 905 F.2d 571, 579 (2d Cir. 1990) ("Prisoners have a right to receive diets consistent with their religious scruples," but "[c]ourts . . . are reluctant to grant dietary requests where the cost is prohibitive, or the accommodation is administratively unfeasible." (citations and internal citations omitted)). Accordingly, a prisoner's Free Exercise claims are "judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Ford*, 352 F.3d at 588 (internal quotation marks omitted).

"To be entitled to protection under the free exercise clause of the First Amendment, a prisoner must make a threshold showing that the disputed conduct substantially burdened his sincerely held religious beliefs." *Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (internal quotation marks omitted); *see also Salahuddin v. Goord*, 467 F.3d 263, 274–45 (2d Cir. 2006) ("The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.").[14] "[A]n individual

---

[14] The Second Circuit has acknowledged that "[i]t has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) ("Assuming" but not deciding "that the substantial burden requirement applies.") The Second Circuit chose not to confront this question—or rather, not to alter the previous assumption that the substantial burden test is a threshold question. *Holland,* 758 F.3d at 220. This Court has already chosen to follow the analysis in *Holland* and thus will

claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (internal quotation marks omitted). The relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin,* 76 F.3d 468, 476 (2d Cir. 1996).

"[A] substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 477 (alterations and internal quotation marks omitted); *Gilliam*, 2017 WL 476733, at *4 (same). The Second Circuit has further specified that "[t]he relevant question in determining whether [the plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the plaintiff's religious] practice." *Ford*, 352 F.3d at 593–94. Once the plaintiff satisfies this burden, the defendants then "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," although "the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (alterations and internal quotation marks omitted). The burden then shifts back to the plaintiff "to show that these articulated concerns were irrational." *Id.* (alteration and internal quotation marks omitted).

### b. Sincerely Held Beliefs

County Defendants argue that Plaintiff has failed to allege that his beliefs are sincerely held. (County Defs.' Mem. 6.) Rather, Plaintiff has only alleged that he was "processed" as Jewish and requested regular Jewish religious services. (*Id.*) County Defendants argue the

---

proceed under the assumption that the substantial burden test is still valid. *See Gilliam v. Baez*, No. 15-CV-6631, 2017 WL 476733, at *4 n.5 (S.D.N.Y. Feb. 2, 2017).

Amended Complaint has no allegations that Plaintiff's beliefs were sincerely held. (*Id.*) While Plaintiff has not explicitly plead that his religious beliefs are "sincerely held," he has alleged that he listed his religious preference as Jewish, (Am. Compl. ¶ 9), participated in the kosher meal program when he was previously incarcerated, (Pl.'s Opp. ¶¶ 5–6), and chose not to eat the non-kosher food and "los[t] unwanted weight and fe[lt] weak and tired." (Feb. 22, 2016 Grievance.) The Second Circuit has found similar allegations sufficient to plea this element. *See Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (finding sufficient evidence to raise a genuine issue of material fact as to sincerity of religious beliefs where Plaintiff "submitted prison documentation that: (1) listed his religious preference as Jewish; (2) showed his participation in kosher meal programs in several other correctional facilities; and (3) showed that he had actually gone without food for several days to avoid eating non-kosher food. He also submitted an affidavit from his mother, in which she stated that she had raised [the plaintiff] according to the Jewish faith and dietary laws."). Construing Plaintiff's allegations liberally, the Court holds that he has sufficiently alleged that his religious beliefs are sincerely held at this stage of the proceedings to survive the Motions To Dismiss.

### c. Lack of Regular Jewish Services[15]

Defendant argues that "the legitimate penological interests pertaining to cost . . . justified the lack of regular Jewish services at WCDOC." (Cty. Defs.' Mem. 7.) More specifically,

---

[15] Aramark is only responsible for providing prison meal services, and Plaintiff does not allege Aramark was in any way involved in the lack of regular Jewish services at WCDOC. (Def. Aramark's Mem. 3 n.2.) Thus, to the extent Plaintiff alleges a First Amendment Free Exercise claim against Aramark regarding the lack of regular Jewish services, that claim is dismissed.

County Defendants point out that in response to Plaintiff's grievance, Plaintiff was informed that WCDOC does not house enough Jewish inmates to warrant a separate Jewish service, and doing so would result in a cost that is unreasonable or disproportionate to those extended to other prisoners for similar purposes.  (*Id.*)

While keeping prison operating costs down may be a "legitimate governmental objective," *see, e.g.*, *Simmons v. Robinson*, No. 07-CV-7383, 2010 WL 5538412, at *10 (S.D.N.Y. Jan. 28, 2010) ("[I]t is well established that [the state] has a legitimate interest in cost-effectively meeting the religious dietary needs of multiple inmate groups."), *adopted*, 2011 WL 31066 (S.D.N.Y. Jan. 4, 2011), the record at this point does not allow a thorough review of the other relevant factors the Court must consider in determining whether there is a penological interest that justified the burden, such as "alternative means of [receiving Jewish services]; the impact on guards, inmates, and prison resources of accommodating [regular Jewish services]; and the existence of alternative means of facilitating [regular Jewish services] that have only a de minimis adverse effect on valid penological interests," *Holland v. Goord*, 758 F.3d 215, 222–23 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 274 (stating courts must consider these four factors in evaluating the legitimate penological interest)).[16]  For example, based on the exhibits Plaintiff attaches to the Complaint, the instruction that Rabbi Horowitz "see to [Plaintiff's]

---

[16] Courts in other circuits have dismissed Free Exercise claims alleging a lack of regular religious services for every religion.  *See, e.g.*, *Smith v. Kyler*, 295 F. App'x. 479, 481–82 (3d Cir. 2008) (holding that the First Amendment was not violated by a prison policy that only provided chaplains for "the largest major faith groups" and prohibited "group worship in the absence of an approved, volunteer [f]aith [g]roup [l]eader," because the prison "ha[d] a legitimate interest in managing limited financial resources and in maintaining prison security," and the plaintiff "ha[d] alternative means of practicing his religion," including "maintain[ing] religious books and materials in [his] cell[]" and "elect[ing] to have a Personal Religious Advisor worship with [him]").

religious needs" does not appear to have been an adequate "alternative means of exercising the burdened right." (Apr. 9, 2016 Grievance Response.) *Id.* Plaintiff wrote to Father Tolve on March 6, 2016 stating he had still "not been advised of any Jewish Services" despite having "written to Rabbi Horowitz." (Am. Compl. Ex. H ("Mar. 6, 2016 Letter").) On March 23, 2016, Plaintiff again wrote to Father Tolve stating he had "not heard anything" about Jewish services from him or Rabbi Horowitz. (Am. Compl. Ex. I ("Mar. 23, 2016 Letter").) On March 31, 2016, Plaintiff wrote to Rabbi Horowitz stating that he had now "written to both [him] and Father Tolve concerning Jewish services" and that "[n]o one . . . called [him] for, or notified [him] . . . in spite of [his] many request[s] for Jewish Services." (Am. Compl. Ex. J ("Mar. 31, 2016 Letter") (emphasis omitted).) On June 6, 2016, Plaintiff again wrote Rabbi Horowitz and Father Tolve stating that in mid-April, "Father [Tolve] told Plaintiff that the Rabbi would visit [him] on Tuesdays or Thursdays," but he had "not seen the Rabbi once since [his] incarceration at WCDOCS except for one Passover ceremony." (Am. Compl. Ex. K ("June 9, 2016 Letter").) Finally, on September 9, 2016, Plaintiff filed a grievance regarding the lack of Jewish services or ability to meet with the Rabbi. (Am. Compl. Ex. L ("Sept. 9, 2016 Grievance").) Thus, based on the allegations in the Amended Complaint, County Defendants have failed to identify a legitimate penological interest that would justify dismissing Plaintiff's Free Exercise Claim. *See Washington v. Chaboty,* No. 09-CV-9199, 2011 WL 102714, at *10 (S.D.N.Y. Jan. 10, 2011) ("The Second Circuit has cautioned that evaluation of penological interests is a fact-intensive inquiry that is not ordinarily amenable to resolution on a motion to dismiss.") (citing *Shakur v. Selsky,* 391 F.3d 106, 115 (2d Cir. 2004)), *rev'd in part on other grounds sub nom. Washington v. Gonyea*, 538 F. App'x. 23 (2d Cir. 2013); *Salahuddin*, 993 F.2d at 309 (finding that

"discovery could help determine whether use of a suitable room or the recreation yard could accommodate [the plaintiff's] right to congregate religious services and satisfy the government's security interests").  Therefore, this claim survives the Motions To Dismiss.

### 6.  Establishment Clause Claims

County Defendants argue the Plaintiff has failed to allege an Establishment Clause violation.  (Cty. Defs.' Mem. 10.)  "The Establishment Clause forbids 'excessive government entanglement with religion.'" *Rweyemamu v. Cote*, 520 F.3d 198, 208 (2d Cir. 2008) (quoting *Lemon v. Kurtzman,* 403 U.S. 602, 613 (1971)).  The Supreme Court has repeatedly made clear that "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so.  *Lee v. Weisman,* 505 U.S. 577, 587 (1992) (alteration and internal quotation marks omitted).  The "principle at the heart of the Establishment Clause" is that "government should not prefer one religion to another, or religion to irreligion."  *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,* 512 U.S. 687, 703 (1994).  Here, Plaintiff has not alleged that Defendants coerced him to support or participate in a particular religion or no religion.  Plaintiff also does not allege that the state established a religion in WCDOC.  *See, e.g.*, *Jackson*, 196 F.3d at 321 (dismissing Establishment Clause claim for lack of kosher meals because "it essentially restates [the plaintiff's] Free Exercise claim— that the prison officials unconstitutionally refused to provide him with a kosher diet . . . This argument is more properly anchored in the Free Exercise Clause than the Establishment

Clause."). The Court therefore grants County Defendants' Motion to Dismiss the Establishment Clause claim.[17]

### 7. Fifth Amendment Claims

County Defendants argue Plaintiff's Fifth Amendment claims should be dismissed, because the Fifth Amendment does not apply to claims against state actors. (Defs.' Mem. 11.) County Defendants are correct that "[t]he Fifth Amendment . . . applies only to proceedings by the Federal Government." *United States v. Ng*, 699 F.2d 63, 69 (2d Cir. 1983) (internal quotation marks omitted). Accordingly, the Court grants County Defendants' Motion to Dismiss the Fifth Amendment claims.[18]

Were the Court to liberally construe Plaintiff's Fifth Amendment claims as a Fourth Amendment Due Process Claim, that too would fail. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (same). Here, Plaintiff's claims are covered by the First and Eighth Amendments. Accordingly, any Fourteenth Amendment Due Process Claim, to the extent one has been pled, is dismissed.

---

[17] To the extent Plaintiff alleges an Establishment Clause claim against Aramark, that claim is dismissed for the same reason.

[18] To the extent Plaintiff alleges a Fifth Amendment claim against Aramark, that claim is dismissed for the same reason.

### 8. Eighth Amendment Claims

Defendants argue that Plaintiff has failed to state an Eighth Amendment claim for cruel or unusual punishment.[19]  (Defs.' Mem. 11–13.)  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  It is axiomatic that "[t]he conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curium).  "[T]he Eighth Amendment requires that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 489 (S.D.N.Y. 2014) (alterations and internal quotations omitted).  "Although the Constitution does not require 'comfortable' prison

---

[19] County Defendants note that it is unclear from the Complaint whether Plaintiff was a pre-trial detainee or convicted prisoner while incarcerated at WCDOC.  (Cty. Defs.' Mem. 11.) The Second Circuit recently held that deliberate indifference claims under the Due Process Clause of the Fourteenth Amendment are analyzed differently than the same claims under the Eighth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).  However, the Second Circuit limited its holding to pretrial detainees, who "have not been convicted of a crime and thus may not be punished in any manner." *Id.* at 29 (internal quotation marks omitted); *see also id.* at 33–34 (relying on the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which analyzed excessive force claims by pretrial detainees under the Fourteenth Amendment); *McCray v. Lee*, No. 16-CV-1730, 2017 WL 2275024, at *4 n.1 (S.D.N.Y. May 24, 2017) ("The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendment. . . . While the decision in *Darnell* sets forth a new analysis for claims brought by pretrial detainees, the analysis under the Eighth Amendment remains intact." (citations omitted)).  Because the Court finds Plaintiff has failed to satisfy the objective prong, which is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment, *Darnell*, 849 F.3d at 30, the Court need not resolve Plaintiff's status at this juncture.  However, because the information is likely to become relevant at a later date, the Parties are hereby ordered to inform the Court by no later than April 30, 2018 whether Plaintiff was a convicted prisoner or a pretrial detainee at WCDOC on February 4, 2016.

conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). To state an Eighth Amendment claim relating to conditions of confinement, Plaintiff must plausibly allege "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a [mens rea prong]—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (italics omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).[20]

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. "Thus, prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Id.* (internal quotation marks omitted). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (alteration and internal quotation marks omitted). The Court must consider the "severity and duration, on a case-by-case basis." *Darnell*, 849 F.3d at 30. Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or

---

[20] In *Darnell*, the Second Circuit indicated that this prong should be referred to the "mens rea prong," rather than the "subjective prong," to prevent confusion. *See Darnell*, 849 F.3d at 29 (italics omitted).

exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation).

Plaintiff has failed to plead that the conditions he faced—both the denial of kosher meals and religious services—alone or in combination, "pose[d] an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. Plaintiff chose not to eat the non-kosher meals provided to him. (Feb. 22, 2016 Grievance.) However, "[h]e has not been denied the meals by . . . [D]efendants. While . . . [P]laintiff's allegations regarding preparation of the meals and compliance with Jewish dietary law are relevant to concerns under the First Amendment and RLUIPA," addressed elsewhere in this opinion, "the allegations do not suggest that the meals were not nutritionally adequate or were dangerous to [P]laintiff's health." *Hayes v. Bruno*, 171 F. Supp. 3d 22, 34 (D. Conn. 2016), *reconsideration denied,* No. 14-CV-1203, 2016 WL 10545502 (D. Conn. Dec. 22, 2016); *see also Ward*, 2009 WL 102928, at *7 ("In this case, [the plaintiff] has failed to establish an Eighth Amendment claim based upon denial of kosher meals during his transport . . . he has neither proven the existence of imminent danger to his health and well-being nor an actual injury. . . Additionally, when [the plaintiff] brought the situation to an officer's attention, the officer . . . attempted to remedy the problem." (footnote and citation omitted)). And, lack of access to religious services is not a sufficiently serious denial of a "basic human need" and did not expose Plaintiff to sufficiently serious risk of harm. *See Walker*, 717 F.3d at 125 (describing "basic human needs" as "food, clothing, medical care, and safe and sanitary living conditions"); *see also Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that because society does not expect or intend prison conditions to be comfortable, only extreme

deprivations are sufficient to sustain a conditions-of-confinement claim." (alteration and internal quotation marks omitted)). Thus, Plaintiff fails allege a sufficiently serious deprivation required to state an Eighth Amendment claim. *See Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *1–2 (N.D.N.Y. Sept. 30, 2015) (denial of hot, low sodium kosher meals does not violate Eighth Amendment); *see also Modlenaar v. Liberatore*, No. 07-CV-6012, 2009 WL 2179661, at *5 (W.D.N.Y. July 22, 2009) (denial of kosher food for six days does not violate the Eighth Amendment) (citing cases). Accordingly, the Court grants County Defendants' Motion to Dismiss the Eighth Amendment claims.[21]

### 9. Equal Protection Claims

County Defendants argue Plaintiff's Equal Protection claim should be dismissed because the Amended Complaint does not allege discriminatory intent. (Defs.' Mem. 13–15.) "The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996). In other words, "the Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (internal quotation marks and emphasis omitted); *see also Bailey v. Town of Evans*, 443 F. Supp. 2d 427, 430 (W.D.N.Y. 2006) (same). To state a violation of the Equal Protection Clause, a plaintiff must allege "that he was treated differently

---

[21] To the extent Plaintiff alleges an Eighth Amendment claim against Aramark, that claim is dismissed for the same reasons.

than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *see also Barrow v. Van Buren*, No. 12-CV-1268, 2015 WL 417084, at *22 (N.D.N.Y. Jan. 30, 2015) (same); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) ("In order to plead a facially valid equal protection claim . . . [a] plaintiff must allege: (1) that he has been treated differently from similarly-situated inmates, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right.").

Plaintiff claims that Defendants systematically discriminated against him (and other Jewish inmates) by denying him kosher meals for eighteen days and limiting the amount of Jewish services. (Am. Comp. ¶¶ 8, 11–12.) The deficiency in Plaintiff's equal protection claim is that it "does not allege that [Plaintiff] was treated differently from *any* identified individuals, let alone individuals who he claims were similarly situated to him in any respect," and "is completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013); *see also id.* at 433 (dismissing the plaintiff's equal protection claim under theories of selective enforcement and class of one where the plaintiff "simply" alleged that the defendants "singled out [the] plaintiff, in part, because of his exercise of constitutional rights" (internal quotation marks omitted)); *Butler v. Bridgehampton Fire Dist.*, No. 14-CV-1429, 2015 WL 1396442, at *5 (E.D.N.Y. Mar. 25, 2015) (dismissing the plaintiff's equal protection claim under the selective enforcement and class of one theories because the complaint "only discusse[d] the harmful actions [the defendants] took with respect to [the] [p]laintiff, but there [was] no discussion whatsoever of any similarities between [the] [p]laintiff and others"). Indeed, Plaintiff does not

identify any particular inmates with religious dietary needs who were treated better than Jewish inmates seeking kosher meals. And, Plaintiff does not allege that inmates of other particular religious affiliations with the same population size as Jewish inmates were provided regular or weekly religious services. *See Jackson*, 196 F.3d at 321 (dismissing claim "because [the plaintiff] presented no evidence whatsoever that he was treated differently from similarly situated members of other religions."). "The absence of comparators is fatal to this claim and, therefore, Plaintiff's equal protection claim is dismissed." *Gilliam*, 2017 WL 476733, at *8.

Additionally, Plaintiff does not sufficiently allege that the denial of kosher meals and regular Jewish services was the "result of intentional or purposeful discrimination." *Phillips*, 408 F.3d at 129. "Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009). Plaintiff alleges "the Chaplain Office, and [WC]DOC systemically [sic] and routinely practice discrim[in]atory acts against Jewish inmates/detaine[e]s [by] denying Jewish detainees their request for kosher meal[s]." (Compl. ¶ 10.) This type of conclusory allegation is insufficient to state a claim. *Collins v. Sovereign Bank*, 482 F. Supp. 2d 235, 240 (D. Conn. 2007) ("Conclusory allegations of discrimination, without evidentiary support or allegations of particularized incidents and absent allegations of discriminatory intent, do not state a valid claim and so cannot withstand a motion to dismiss." (alteration and internal quotation marks omitted)). Moreover, the fact that County Defendant rectified Plaintiff's lack of kosher meals upon receiving his grievance suggests a lack of any such intent. (Feb. 29, 2016 Grievance Response.) And, Plaintiff also does not offer any factual allegations that County Defendants acted with discriminatory intent in denying him regular or weekly Jewish religious

services.  As is clear from responses to his grievances attached to the Amended Complaint, regular or weekly Jewish religious services were not provided because the number of Jewish inmates in WCDOC was insufficient to justify the cost of a separate Jewish services.  (Apr. 9, 2016 Grievance Response.)  This belies Plaintiff's claim that the dearth of Jewish religious services was the result of intentional or purposeful discrimination.  Accordingly, the Court grants County Defendants' Motion to Dismiss the Fourteenth Amendment claims. [22]

### 10. RULIPA Claims

County Defendants seek dismissal of Plaintiff's allegations pursuant to RLUIPA because RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities.  (*See* Cty. Defs.' Mem. 16.)  RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).  "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities."  *Holland*, 758 F.3d at 224 (citing *Washington*, 731 F.3d at 145–46); *see also Keitt v. Hawk*, No. 13-CV-850, 2015 WL 1246058, at *11 (N.D.N.Y. Jan. 8, 2015) (same).  Instead, a plaintiff may only seek injunctive relief.  *See Holland*, 758 F.3d at 224; *see also Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 520 (S.D.N.Y. 2010) ("It is readily apparent that injunctive relief constitutes appropriate relief under RLUIPA." (internal quotation marks omitted)).  Because Plaintiff only

---

[22] To the extent Plaintiff alleges a Fourteenth Amendment claim against Aramark, that claim is dismissed for the same reasons.

seeks money damages under RLUIPA, this claim is dismissed.[23]  *See Gilliam*, 2017 WL 476733, at *7 (dismissing claim for monetary damages under RLUIPA).[24]

### 11. Claims for Declaratory Relief

To the extent Plaintiff seeks declaratory relief, any claim for such relief is moot. (*See* Compl. 6.)  Plaintiff was released from WCDOC custody sometime after the filing of the Complaint.  (*See* Dkt. Nos. 14, 18, 54 (notifying the Court of Plaintiff's change of address from WCDOC).)  "Where a prisoner has been *released* from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot."  *Pugh*, 571 F. Supp. 2d at 489; *Salahuddin*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *McAlpine v. Thompson*, 187 F.3d 1213, 1217–18 (10th Cir. 1999) (noting that eight other "circuit[s that have] consider[ed] the issue ha[ve] decided that release to parole moots a claim regarding prison conditions and regulations" and so holding (italics omitted)); *Pugh*, 571 F. Supp. 2d at 490 (denying injunctive and declaratory relief for former inmate's RLUIPA claims as moot).[25] Accordingly, Plaintiff's claim for injunctive and declaratory relief is moot.

---

[23] To the extend Plaintiff is invoking RLUIPA to obtain injunctive relief against Defendants, it is denied for the reasons discussed below.

[24] To the extent Plaintiff alleges a RLUIPA claim against Aramark, that claim is dismissed for the same reason.

[25] As of December 26, 2017, Plaintiff appears to be incarcerated at Putnam County Correction Facility.  (*See* Dkt. No. 60.)  Even if Plaintiff is incarcerated, his claims regarding his time at WCDOC are nonetheless still moot as he is incarcerated at a different facility.  *See*

### 12.  State Law Claims

Defendants contend that the Court should decline to exercise jurisdiction over the state law claims if the federal claims are dismissed, or in the alternative, that the state law claims lack merits.  (*See* Cty Defs.' Mem. 17–19; Def. Aramark's Mem. 12–13.)  Because the Court has not dismissed all of federal claims, the Court maintains supplemental jurisdiction over the state law claims and turns to the merits.

### a.  New York Constitutional Claims

County Defendants argue that Plaintiff's Free Exercise Claim under Article I § 3 of the New York Constitution should be dismissed on the same grounds as the First Amendment Free Exercise Claim.  (Cty. Defs.' Mem. 17.)  While "the issue of identicality between federal and New York State constitutional protection [is] an open one," *New Creation Fellowship of Buffalo v. Town of Cheektowaga, N.Y.*, No. 99-CV-460, 2004 WL 1498190, at *79 (W.D.N.Y. July 2, 2004), *aff'd sub nom.* 164 F. App'x 5 (2d Cir. 2005), there is significant overlap between the two claims.

Pursuant to Article I § 3 of the New York Constitution, "[t]he free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."  N.Y. Const. art. I, § 3.  "This free exercise right has expressly been extended to those incarcerated in New York correctional facilities by section 610 of the Correction Law."  *Rivera v. Smith*, 472 N.E.2d 1015, 1019–20 (N.Y. 1984) (citing N.Y. Correct. Law § 610).  "Notwithstanding the importance of this right, it does not

---

*Salahuddin*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

prevent the imposition of reasonable restrictions by prison officials, but rather such restrictions must be weighed against the institutional needs and objectives being promoted." *Id.* "The nature of a correctional facility, where confinement and order are necessary, is such that inmates cannot be afforded free exercise rights as broad as those enjoyed outside the prison setting." *Id.* Thus, in evaluating a claim under Article I § 3 of the New York Constitution, the Court must balance "the interest of the individual right of religious worship against the interest of the State which is sought to be enforced." *People ex rel. DeMauro v. Gavin*, 706 N.E.2d 738, 739 (N.Y. 1998).

For the same reasons the Court found the allegations sufficient to state a violation of Plaintiff's Free Exercise rights for the delay in receipt of kosher meals and lack of regular Jewish religious services, the Court finds Plaintiff has alleged a violation of Article I § 3 of the New York Constitution. However, at this stage in the proceeding, for the same reasons as the federal claims, the Court cannot properly balance Plaintiffs "interests of . . . religious worship against the interest of" Westchester County. *Gavin*, 706 N.E.2d at 739. What "institutional needs and objectives [are] being promoted," *Rivera*, 472 N.E.2d at 1020, by the restrictions Plaintiff complains of are open questions that can be discussed at a later date in a motion for summary judgment. Thus, County Defendants' Motion is denied as to this claim.[26]

---

[26] Aramark does not argue the New York Constitutional claim against it fails on the merits or explain how the Court should evaluate Aramark's private entity statutes in regards to the claim. The Court declines to sua sponte resolve this issue without briefing, and thus, will not dismiss that claim at this time. Aramark is free to address the applicability of the New York State Constitution to claims against it as a private entity and the merits of the claim in any subsequently filed motions.

### b. Minimum Standards §§ 7009.4 and 7024.6 Claims

Defendants argue that Minimum Standards §§ 7009.4 and 7024.6 do not provide a private right of action. 9 N.Y.C.R.R. §§ 7009.4 & 7024.6 (Cty. Defs.' Mem. 19; Def. Aramark's Mem. 11–12.) They are right. *See generally Powlowski v. Wullich*, 479 N.Y.S.2d 89, 95 (App. Div. 1984) ("Because of the limitations on the power of the judiciary in such matters . . . enforcement of [the minimum] standards is a matter for the Commission of Corrections or others in the executive branch of government and not for the courts." (citing *Jones v. Beame*, 380 N.E.2d 277, 279 (N.Y. 1978)). Thus, the Court grants County Defendants' and Aramark's Motions to Dismiss these claims.

### c. New York Civil Rights Law § 40-c Claims

County Defendants argue that Plaintiff's reference to New York Civil Rights Law § 40-c fails to state a claim for relief under the statute. (Cty. Defs.' Mem. 19.) The Court agrees that jails and prisons are not defined as "places of public accommodation" or "amusement" under the statute. N.Y. Civ. Rights Law § 40. Thus, the Court grants County Defendants' Motions to Dismiss this claim.[27]

### d. Intentional Infliction of Emotional Distress Claims

Defendant Aramark argues that Plaintiff fails to state a claim for intentional infliction of emotional distress. (Def. Aramark's Mem. 11.) "The state-law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4)

---

[27] To the extent Plaintiff alleges a claim pursuant to New York Civil Rights Law § 40-c against Aramark, that claim is dismissed for the same reason.

severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996).  Plaintiff has not alleged any of these elements in the Amended Complaint, and thus, the Court grants Defendant Aramark's Motions to Dismiss this claim.[28]

### III.  Conclusion

For the foregoing reasons, as to Westchester County, the Motion to Dismiss the Amended Complaint is granted as to all the claims.

As to the claims against Roberts in his official and individual capacity, the Motion to Dismiss the Amended Complaint is granted as to all the claims.

As to the claims against Tosi in his individual capacity, the Motion to Dismiss the Amended Complaint is granted as to the First Amendment Establishment Clause, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment claims; RLUIPA claims; state law claims pursuant to Minimum Standards §§ 7009.4 and 7024.6; state law claims pursuant to New York Civil Rights Law 40-c; and state law claims for intentional infliction of emotional distress. Tosi's Motion to Dismiss the Amended Complaint is denied as to the First Amendment Free Exercise Claim.

As to the claims against Aramark, the Motion to Dismiss the Amended Complaint is granted as to the First Amendment Free Exercise Clause, First Amendment Establishment Clause, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment claims; RLUIPA claims; state law claims pursuant to Minimum Standards §§ 7009.4 and 7024.6; state law claims pursuant to New York Civil Rights Law 40-c; and state law claims for intentional infliction of

---

[28] To the extent Plaintiff alleges a claim of intentional infliction of emotional distress against County Defendants, that claim is dismissed for the same reason.

emotional distress. Aramrak's Motion to Dismiss the Amended Complaint is denied as to the New York Constitutional claims.

However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissals are without prejudice. Should Plaintiff choose to file a Second Amended Complaint, he must do so within 30 days of this Opinion. Plaintiff should include within that Second Amended Complaint any changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. The Second Amended Complaint will replace, not supplement, the Amended Complaint. The Second Amended Complaint must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations contained in supplemental letters, declarations, or memoranda. If Plaintiff fails to abide by the 30-day deadline, this Action may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 43, 45.)

SO ORDERED.

DATED: March 30, 2018
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE